UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BOZENA WILK,                                          MEMORANDUM AND ORDER

        Plaintiff,                                   10 Civ. 5530 (ILG) (JMA)

   - against -

VIP HEALTH CARE SERVICES, INC., et al.,

        Defendants.
-------------------------------------------------------x

GLASSER, Senior United States District Judge:

On February 18, 2011, plaintiff Bozena Wilk ("Wilk"), on behalf of herself and others similarly situated, filed an amended complaint against defendants VIP Health Services, Inc. ("VIP"), Shlomo Appel ("Appel"), one of VIP's owners and managers, several Jane Doe employees at VIP (together, the "VIP defendants"), the City of New York, the New York City Human Resources Administration (the "HRA"), and Robert Doar, the Commissioner of the HRA (together, the "Municipal defendants").

VIP is a home health care services provider that employed Wilk as a home care attendant from November 2004 to approximately March 2010. During that time, VIP was under contract with the Municipal defendants to employ home care attendants such as Wilk in private households in exchange for Medicaid and Medicare funding it received from the HRA. The crux of Wilk's claims is that she was not compensated properly for the hours she worked while employed by VIP. She alleges violations of (1) the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207 (the "FLSA") and the wage orders promulgated thereunder by all defendants; (2) the New York Labor Law, Art. 6 § 190 et seq., Art. 19 § 650 et seq. (the "NYLL") and the wage orders promulgated thereunder by the VIP defendants; and (3) her civil rights under 42 U.S.C. § 1983 by the Municipal

defendants.  She also alleges claims of breach of contract against VIP; and quantum meruit against the VIP defendants.

The VIP defendants now move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all of the claims against defendant Appel, along with the breach of contract and quantum meruit claims against the remaining VIP defendants.  For the reasons set forth below, the VIP defendants' motion is DENIED in its entirety.

## I.  BACKGROUND

The following facts are taken from the amended complaint filed February 18, 2011 and are accepted as true for the purposes of this motion.  VIP, a not-for-profit corporation with its principal place of business in New York, provides, among other things, nursing, therapy, and home health care services to individuals in New York. Amended Complaint dated Feb. 18, 2011 ("Am. Compl.") ¶¶ 9, 22 (Dkt. No. 21). Pursuant to periodic contracts with the Municipal defendants, VIP provides its services to, among others, residents of Queens who receive government assistance.  Am. Compl. ¶ 44.  These services are funded by Medicare and Medicaid monies that are disbursed to VIP by the HRA and the New York State Department of Health on behalf of the individuals receiving the services.  Am. Compl. ¶ 44.  Appel is one of VIP's owners and managers, and he has operational control over the company.  Am. Compl. ¶¶ 5, 31.

VIP employed Wilk as a home care attendant, a job in which she was responsible for, among other things, feeding, bathing, and cleaning patients, along with household chores such as cleaning the patients' bathrooms and kitchens.  Am. Compl. ¶¶ 40, 58, 88.  Wilk's performance of these household chores regularly encompassed more than

20% of her workweek.  Am. Compl. ¶ 57.  Wilk's employment with VIP began in November 2004 after she entered into an oral agreement with VIP to perform services as a home care attendant in exchange for an hourly wage of $10 up to 40 hours worked and $15 for each hour she worked in excess of 40 hours.  Am. Compl. ¶¶ 21, 42, 78.  She continued her employment with VIP until approximately March 2010.  Am. Compl. ¶ 21.

Wilk regularly worked more than 40 hours a week and sometimes worked as many as 100 hours a week.  Am. Compl. ¶¶ 55, 81.  She also frequently worked 24 hour shifts; the first 12 hours of the shift were referred to as "day hours," while the second were referred to as "night hours."  Am. Compl. ¶¶ 60-61.  During theses 24 hour shifts, defendants paid Wilk a different hourly rate for the day hours and the night hours:  $10 per hour for the day hours and a flat sum of between $15 and $20 for the night hours.  Am. Compl. ¶¶ 61, 78.[1]  Moreover, defendants did not pay Wilk an hourly rate of $15 for the hours she worked in excess of 40 per week.  Am. Compl. ¶ 42, 55-56, 83.

Wilk initiated this action on November 30, 2010 seeking compensatory damages, liquidated damages under the NYLL and FLSA, interest, and attorney's fees.  On

---

[1] The amended complaint is internally inconsistent with respect to whether Wilk was paid a flat sum for the night hours or an hourly rate.  Compare Am. Compl. ¶ 61 ("For the 12 'night hours' they worked Plaintiff and others similarly situated were paid between $15 and $20 an hour for the entire 12 hours." (emphasis added)), with Am. Compl. ¶ 83 ("VIP only paid them approximately $16 for what it deemed nighttime hours, which were comprised of 12 hours each day when patient was purportedly sleeping.").  It is clear from Wilk's submissions, however, that the inclusion of "an hour" in paragraph 61 of the amended complaint is a typographical error.  See Memorandum of Law in Opposition to VIP Defendants' Motion to Dismiss dated July 22, 2011 ("Pl.'s Opp'n") at 3 (Dkt. No. 34) ("Despite the fact that [Wilk] regularly performed work at night, she only received $16 for her entire 12 hours of night time work." (citing Am. Compl. ¶ 61)).

January 18, 2011, the VIP defendants filed a partial motion to dismiss the complaint but on February 18, 2011, Wilk filed an amended complaint, thus rendering the motion to dismiss moot.  The VIP defendants on March 4, 2011 renewed their motion to dismiss, Memorandum of Law in Support of Motion to Dismiss dated Mar. 4, 2011 ("Defs.' Mem.") (Dkt. No. 24) and, after the parties were unable to consummate a settlement, Wilk on July 22, 2011 filed her opposition submissions.  The VIP defendants did not file a reply.

## II. DISCUSSION

### A.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss pursuant to Rule 12(b)(6), Wilk's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice.  Id. at 1949 (alteration in original) (internal quotations, citations, and alterations omitted).  This plausibility standard "is not akin to

a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Thus, on a motion to dismiss for failure to state a claim, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The VIP defendants maintain Wilk is not so entitled because she has failed to sufficiently allege her (1) breach of contract claims and quantum meruit claims against them for recovery of allegedly unpaid wages; and (2) FLSA and NYLL claims against Appel in his individual capacity.  Defs.' Mem. at 4-10.  The Court turns to these contentions below.

## B. Breach of Contract

To make out a breach of contract claim against a defendant under New York law a plaintiff must show:  "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by [the] defendant; and (4) damages to the plaintiff caused by [the] defendant's breach." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir.

5

2011) (citations omitted).[2]  "While these elements need not be separately pleaded, failure to allege them will result in dismissal."  James v. Countrywide Fin. Corp., No. 10 Civ. 4953 (DRH) (WDW), 2012 WL 359922, at *22 (E.D.N.Y. Feb. 22, 2012) (citation and internal quotation marks omitted).

Primarily at issue here is the first element.  The existence of a contract requires an offer, acceptance, consideration, mutual assent and intent to be bound. Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (citations omitted) (applying New York law).  Further, "'[i]n order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based.  A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim," but the plaintiff "must at least set forth the terms of the agreement upon which liability is predicated by express reference.'"  James, 2012 WL 359922, at *22 (quoting Howell v. Am. Airlines, Inc., No. 05 Civ. 3628 (SLT), 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006)); see also McGee v. State Farm Mut. Auto. Ins. Co., No. 09 Civ. 3579 (ILG) (RLM), 2011 WL 5409393, at *8 (E.D.N.Y. Nov. 8, 2011) ("'In pleading [the] elements [of a breach of contract claim], a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue,'" (quoting CreditSights, Inc. v. Ciasullo, No. 05 Civ. 9345 (DAB), 2008 WL 4185737, at *10 (S.D.N.Y. Sept. 5, 2008))).  Defendants maintain that Wilk has failed to allege such terms here.  Defs.' Mem. at 5-6.  The Court disagrees.

While it is true that Wilk failed to identify such terms in her previously filed complaint—which the VIP defendants moved to dismiss on identical grounds—her

---

[2] The parties do not dispute that New York law applies.

amended complaint rectifies this deficiency and identifies the specific contractual terms

VIP allegedly breached:  that she would be paid an hourly wage of $10 up to 40 hours

worked and $15 for each hour she worked in excess of 40 hours.  Am. Compl. ¶¶ 42, 78.

Indeed, Wilk has alleged facts sufficient to show the existence of a contract between her

and VIP, her performance under the contract, the contract's breach, and that she

suffered damages as a result of the breach.  She alleges that she "entered into an oral

agreement to perform work and services as [a] healthcare attendant[] for VIP," Am.

Compl. ¶ 77, in exchange for compensation of  a wage of "$10 an hour for each hour she

worked and overtime pay for each hour worked in excess of 40" hours, Am. Compl. ¶ 78.

Wilk further alleges that the parties also agreed that the overtime rate for all hours in

excess of 40 was to be 150% of her normal wage.  Am. Compl. ¶ 42.  These allegations

sufficiently show that the alleged agreement was supported by consideration.  See, e.g.,

Ferguson v. Lion Holdings, Inc., 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004)

(consideration means "a bargained-for exchange of promises or performance" (citing

Restatement (Second) of Contracts § 71 (1981))).  Wilk's allegation that she "work[ed] as

[a] home attendant[], often for as much [sic] as 100 hours a week," Am. Compl. ¶ 81,

show her performance under the contract.  And her allegations that VIP failed to pay her

according to the agreed upon hourly rates shows VIP's breach.  Am. Compl. ¶ 83.

Finally, Wilk alleges that as a result of VIP's failure to pay her for her services—its

breach—she suffered damages.  Am. Compl. ¶ 85.

VIP contends that these "barebones allegations . . . lack precision" as they contain

no detail with respect to "when the alleged agreement was entered into, what VIP

representative entered into the alleged agreement on behalf of VIP, the specific terms of

the alleged agreement . . . and on what days, or how many days, Plaintiff worked and did not receive proper compensation for her services." Defs.' Mem. at 5-6.[3] Yet whether Wilk's allegations "lack precision" and contain such details is irrelevant; in order to state a claim, Wilk's pleading need only contain "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Wilk's factual allegations are sparse to be sure, but Rule 8 "does not require detailed factual allegations," Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted), and courts considering arguments similar to those defendants raise here under analogous circumstances have rejected them. See Meadows v. Planet Aid, Inc., 676 F. Supp. 2d 83, 95 (E.D.N.Y. 2009) (denying 12(b)(6) motion and rejecting argument that failure of pro se plaintiff, a former employee of defendant asserting FLSA and breach of contract claims, to allege "the hours worked or the work performed" requires dismissal, reasoning that Rule 8(a) "does not require this level of specificity at the pleading stage,

---

[3] VIP also states that Wilk's claim is "baseless and duplicative," presumably contending that Wilk's breach of contract claim is duplicative of her FLSA claim. Defs.' Mem. at 6. Although whether common law claims for overtime pay are preempted by the FLSA is an open question that the Second Circuit has not addressed, see, e.g., Chen v. Street Beat Sportswear, Inc., 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) ("[T]he law is unsettled as to whether the FLSA preempts state common law claims."), it is clear that the FLSA does not preempt common law claims for "straight time," i.e., non-overtime hours, for which a plaintiff was paid at least minimum wage. See, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F .Supp. 2d 497, 508 & n.4 (E.D.N.Y. 2011). Here, since it is not clear from Wilk's complaint whether her breach of contract claim seeks both straight time and overtime or just overtime, the Court will not dismiss Wilk's breach of contract claim on preemption grounds at this time. "Discovery will reveal whether this claim seeks overtime compensation and whether it is duplicative of [p]laintiff's FLSA claim for overtime compensation." Chaluisan v. Simsmetal E. LLC, 698 F. Supp. 2d 397, 408 (S.D.N.Y. 2010) (motion to dismiss unjust enrichment as preempted by the FLSA denied where it was unclear from complaint whether plaintiff sought only overtime compensation).

especially not for pro se plaintiffs"); Kaplan v. Aspen Knolls Corp., 290 F. Supp. 2d 335, 338 (E.D.N.Y. 2003) (denying 12(b)(6) motion, rejecting defendant's argument that plaintiff's breach of contract claim should be dismissed because plaintiff failed to allege, among other things, when and by whom plaintiff's compensation contract was executed, and reasoning that "these arguments do not warrant dismissal, as it is not necessary for each detail of a contract to be pleaded individually").[4]

Wilk has sufficiently alleged a breach of contract claim against the VIP defendants, and their motion to dismiss this claim is therefore denied.

### C. Quantum Meruit Claims

To state a claim for recovery in quantum meruit Wilk must sufficiently allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (applying New York law) (internal quotation marks omitted).[5]

---

[4] Kaplan was decided before Twombly and Iqbal and included the pleading standard established in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," and which the Supreme Court subsequently retired in Twombly. See Twombly, 550 U.S. at 563 (stating that Conley's "no set of facts" language "has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). The ruling in Kaplan did not, however, turn on this pleading standard and the factual allegations there, as here, were more than sufficient to state a plausible claim for breach of contract.

[5] Under New York law, claims of quantum meruit and unjust enrichment constitute a single cause of action. See Catskill, 418 F.3d at 175.

The VIP defendants move to dismiss Wilk's quantum meruit claims against them on grounds similar to those they raised with respect to Wilk's breach of contract claims. They argue:  (1) Wilk has adequate remedies at law for the alleged harm she suffered—her FLSA and NYLL claims—and her quantum meruit claim is thus duplicative of those claims; and (2) Wilk's complaint does not sufficiently state a claim for quantum meruit because it does not contain factual details regarding how often she performed her home attendant services, or where or for whom she performed them.  Defs.' Mem. at 7-8.  The VIP defendants also maintain that Wilk's quantum meruit claim is precluded in light of Wilk's allegations concerning the existence of an agreement between her and VIP.  Defs.' Mem. at 7 n.4.  The Court finds these contentions unpersuasive.

With respect to the VIP defendants' last contention, while it is true that a claim for quantum meruit or unjust enrichment is precluded when a valid contract governing the same subject matter exists between the parties, see, e.g., Catskill, 418 F.3d at 175, a quantum meruit claim may be alleged alongside a breach of contract claim where, as here, the parties dispute the existence or validity of the alleged contract, see, e.g., Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926087, at *6 (S.D.N.Y. Aug. 21, 2004) (citing Net2Globe Int'l, Inc. v. Time Warner Telecomm. of New York, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003)).[6]  Wilk thus may plead both her quantum meruit and breach of contract claims.

The same is true with respect to Wilk's quantum meruit, NYLL, and FLSA claims; Wilk may plead these causes of action in the alternative as well.  See id. (denying motion

---

[6] The VIP defendants contest that any agreement between VIP and Wilk exists, stating that they "know of no such agreement."  Defs.' Mem. at 5 n.2.

to dismiss unjust enrichment claim on grounds that it was preempted by FLSA, reasoning that at "the pleading stage . . . parties are entitled to plead causes of action under both state and federal law to vindicate the same right"); Chaluisan, 698 F. Supp. 2d at 408 (motion to dismiss unjust enrichment as preempted by the FLSA denied where unclear whether "[p]laintiff's unjust enrichment claim [was] based solely on an alleged FLSA violation, or whether it [had] an independent basis"); cf. Avery v. City of Talladega, 24 F.3d 1337, 1348 (11th Cir. 1994) (concluding that it was error for district court to grant summary judgment on state law breach of contract claim as preempted by FLSA and allowing contract claim to survive "as an alternative legal theory").

This is particularly so here because, as discussed above, the law is unsettled as to whether the FLSA preempts common law claims such as Wilk's claim for quantum meruit and, as in Chaluisan, it is unclear from Wilk's complaint whether her quantum meruit claim is co-terminus with her FLSA and NYLL claims.  In fact, Wilk's allegations are quite similar to those of the plaintiff in Chaluisan who simply alleged he "conferred the benefit of his services on the Defendants with the understanding and expectation that he would be compensated for their [sic] services" and that "[d]efendants have intentionally failed and refused to fully compensate Plaintiff for his services." Chaluisan, 698 F. Supp. 2d at 408.  Similarly, Wilk alleges that she "performed work and services as [a] home care attendant[] for [the VIP Defendants]" and she "had reasonable expectations of payment for the hours [she] worked for [the VIP defendants], but [they] failed to remunerate Plaintiff and others similarly situated for all the hours they worked, particularly for the nighttime hours."  Am. Compl. ¶¶ 87, 90.  Defendants will have the opportunity during discovery to determine the specific hours Wilk seeks

11

compensation for and whether he quantum meruit claim is in fact co-terminus with her FLSA and NYLL claims; and, if so, may choose to move for summary judgment at a later time.[7]

Also unavailing is the VIP defendants' contention that Wilk has not sufficiently alleged her quantum meruit claim.  Defs.' Mem. at 8 ("Plaintiff fails to allege facts which identify the specific services she performed or the reasonable value of their [sic] services.").  Wilk does, in fact, identify the specific services she performed:  "providing home care services, including but not limited to, feeding the patient, bathing the patient, cleaning after [sic] the patient and the like."  Am. Compl. ¶ 88.  She likewise generally identifies the reasonable value of the services she performed—an hourly wage of $10 up to 40 hours worked and $15 for each hour she worked in excess of 40 hours.  Am. Compl. ¶¶ 42, 78.[8]  In any event, the VIP defendants have failed to provide the Court with any authority in which a court dismissed a quantum meruit claim based on allegations similar to those in the amended complaint.

---

[7] The VIP defendants argue that <u>Clougher v. Home Depot, Inc.</u>, 696 F. Supp. 2d 285 (E.D.N.Y. 2010) and <u>Bongat v. Fairview Nursing Care Ctr., Inc.</u>, 341 F. Supp. 2d 181 (E.D.N.Y. 2004) support their contention that Wilk's quantum meruit claim is duplicative of her FLSA and NYLL claims.  Defs.' Mem. at 6-7.  But these decisions are of little relevance; both were decided on summary judgment after the parties had engaged in discovery to determine the scope of the plaintiffs' common law claims.  Further, the <u>Bongat</u> court's dismissal of the plaintiffs' unjust enrichment and quantum meruit claims was premised, in part, on the fact that the court had granted the plaintiffs the relief they sought under the FLSA, thus providing them with an adequate remedy at law for their injuries.  <u>See</u> <u>Bongat</u>, 341 F. Supp. 2d at 189.

[8] Wilk originally failed to identify such terms in her previously filed complaint, but the amended complaint corrects these omissions.

For all of these reasons, the VIP defendants' motion to dismiss Wilk's quantum meruit claim is denied.

### D. FLSA and NYLL Claims Against Appel

Wilk brings claims against all of the defendants, including Appel in his individual capacity, as "employers" under the FLSA pursuant to 29 U.S.C. §§ 206, 207 and the wage orders issued under 29 C.F.R. § 552, seeking her allegedly unpaid statutory minimum wage and overtime compensation. Am. Compl. ¶ 96. She seeks the same relief under the NYLL's minimum wage and overtime provisions. Am. Compl. ¶ 93. The VIP defendants move to dismiss these claims as against Appel, contending that Wilk failed to allege sufficient facts to establish Appel's individual liability as an "employer" within the meaning of the FLSA and NYLL. Defs.' Mem. at 8-10. Wilk responds that she has averred facts sufficient to show Appel's status as an "employer" in light of her allegations that Appel, as an owner and director of VIP, had operational control over the company, made decisions such as how many attendants to employ and what rate to pay them, and had the authority to hire and fire any attendant. Pl.'s Opp'n at 8-9. The Court agrees.

"In identifying the persons or entities who qualify as 'employers' . . . statutory definitions sweep broadly." Barfield v. N. Y. City Health & Hosps. Corp., 537 F.3d 132, 140 (2d Cir. 2008). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). It defines an "employee," as, among other things, "any individual employed by an employer." Id. § 203(e)(1). The definition of employ under the FLSA "includes to suffer

13

or permit to work." Id. U.S.C. § 203(g).[9] "An entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer. Chen, 364 F. Supp. 2d at 277 (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) and Bartels v. Birmingham, 332 U.S. 126, 130, 67 S. Ct. 1547, 91 L. Ed. 1947 (1947)).  An entity or person need not possess "formal control" over a worker to qualify as an employer but instead may simply exercise "functional control" over the worker in question.  Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003).

In determining whether such functional control exists, a court may consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four factors standing alone is dispositive," id., and a court should consider "any other factors it

---

[9] The NYLL's definition of employment is almost identical to the FLSA's.  See N.Y. Lab. Law § 2(7) ("Employed' includes permitted or suffered to work.").  Likewise, "New York's 'employer' provisions are equally [as] broad [as the FLSA's]." Garcia v. La Revise Assocs. LLC, No. 08 Civ. 9356 (LTS) (THK), 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) (citing Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)). Consequently, because "[c]ourts hold that the New York Labor Law embodies the same standards for joint employment as the FLSA," Chen, 364 F. Supp. 2d at 278 (collecting cases), and because "[t]here is general support for giving FLSA and the New York Labor Law consistent interpretations," Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) (citation and internal quotation marks omitted), the Court's conclusions with respect to whether Appel constitutes an "employer" under the FLSA will apply equally to whether he constitutes an employer under the NYLL.

deems relevant," <u>Zheng</u>, 355 F.3d at 71-72; <u>see also</u> <u>Herman</u>, 172 F.3d at 139 ("Since economic reality is determined based upon <u>all</u> the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." (emphasis in original)); <u>Ansoumana v. Gristede's Operating Corp.</u>, 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003) (the "economic reality" test "takes into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer").

Moreover, "[t]he regulations promulgated by the DOL under the FLSA expressly provide that an individual may be employed by more than one entity"—multiple "joint employers"—when carrying out a single task. <u>Chen</u>, 364 F. Supp. 2d at 277-78 (citing 29 C.F.R. § 791.2(a)). Thus, individual officers, directors, and executives of an entity may constitute "employers" of an employee if they "possessed the power to control" him or her. <u>See, e.g.</u>, <u>Herman</u>, 172 F.3d at 139-40 (founder and 50% owner of company constituted employer under FLSA because he was responsible for hiring decisions at company, supervised its work schedules and conditions of employment, and had authority to sign its paychecks); <u>Ansoumana</u>, 255 F. Supp. 2d at 192-93 (individual defendants constituted employers under the FLSA because evidence on summary judgment established that they were the founders, owners, and sole shareholders of company and that they personally operated it); <u>Gayle v. Harry's Nurses Registry, Inc.</u>, No. 07 Civ. 4672 (CPS) (MDG), 2009 WL 605790, at *9 (E.D.N.Y. Mar. 9, 2009) (evidence on summary judgment established that CEO of traveling nurse company constituted employer under FLSA where CEO testified that he "overs[aw] the whole operation, mak[ing] sure that the [nursing] service ha[d] been provided."); <u>cf.</u> <u>Bravo v.</u>

Eastpoint Int'l, Inc., No. 99 Civ. 9474 (WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing claim against fashion designer Donna Karan as employer under the FLSA because plaintiffs only alleged her status as the owner and chairperson of employer company and failed to allege any facts establishing her "power to control the plaintiff workers").

Indeed, "the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing cases)); see also Ansoumana, 255 F. Supp. 2d at 184 ("[O]fficers and owners of corporations may be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions."). This control, however, "may be restricted, or exercised only occasionally" and "does not require continuous monitoring of employees, looking over their shoulders at all times." Herman, 172 F.3d at 139.

Applying this standard and bearing in mind that the "Supreme Court has emphasized the expansiveness of the FLSA's definition of employer," id. (citation omitted), the Court concludes that Wilk has alleged enough facts to show that Appel had sufficient control over Wilk to be considered her employer as that term is defined by the FLSA and NYLL. Wilk alleges as follows:

5.   Appel is an officer, shareholder, manager and/or majority owner of VIP. . . .
31.   At all relevant times, Appel had operational control over VIP.

16

32.   Appel was authorized to make decisions on behalf of VIP, particularly the rate of pay to be paid to its employees, how payments were to be made, and the frequency of the payments.

33.   Appel also decided how many employees, including home attendants, VIP would employ in any given time.

34.   Furthermore, Appel had the authority to hire and fire employees, including Plaintiff and other home attendants.

Am. Compl. ¶¶ 5, 31-34.  The decision in Severin v. Project OHR, Inc., No. 10 Civ. 9696 (DLC), 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011), which involved facts nearly identical to the ones here, buttresses the Court's conclusion regarding the sufficiency of these allegations.  There, the plaintiffs, home care attendants, brought FLSA and NYLL claims against their former employer, a provider of home health care services to disabled, frail, and elderly individuals who qualify for government assistance, seeking unpaid wages, particularly for night shifts in which they were allegedly paid a flat sum for a 12 hour period of time.  Id. at *1.  They also sued their former employer's executive director in her individual capacity, alleging that she "had actual influence over hiring and firing decisions, and the terms of their employment."  Id.

The individual defendant moved to dismiss the claims against her, contending that she did not constitute an employer within meaning of the FLSA and NYLL.  Id.  The court rejected these contentions and denied the motion, reasoning that the allegations were sufficient to show that the individual defendant "controlled personnel decisions, and had the power to hire and fire, set wages, and otherwise control the terms and conditions of the plaintiffs' employment."  Id.  The same is true here.  Since Wilk alleges that Appel had influence over hiring and firing decisions, and the terms and conditions of her employment—including how, when, and how much she was to be paid—the VIP defendants' motion to dismiss the claims against Appel is denied.

17

The VIP defendants rely on two cases in support of their contention that Wilk has failed to sufficiently allege Appel's control over Wilk.  Defs.' Mem. at 8-9.  But the allegations at issue in those cases bear little resemblance to the ones here.  For instance, in Xue Lian Lin v. Comprehensive Health Management, Inc., No. 08 Civ. 6519 (PKC), 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009), the court granted the individual defendants' motion to dismiss the FLSA and NYLL claims against them for several reasons—none of which is also applicable in this case.  First, "[t]he complaint merely allege[d] that 'upon information and belief, Defendants were employers . . . within the meaning of the FLSA,' . . . [and] that 'Defendants employed Plaintiffs within the meaning of the FLSA.'"  Id.  Second, "there [was] no allegation that any Individual Defendant had power to mak[e] hiring or firing decisions, control work schedules or employment conditions, determine the rate or method of payment, or maintain employment records."  Id.  And finally, "the complaint [did] not even allege that the Individual Defendants held supervisory or managerial positions at [the plaintiffs' former employer.]"  Id.

The allegations at issue in Tracy v. NVR, Inc., 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009), upon which the VIP defendants also rely, also bear little resemblance to those in the amended complaint.  The court in Tracy granted the motion of an individual defendant, the Chief Human Resources Officer of a large multi-billion dollar corporation, to dismiss the plaintiff's FLSA and NYLL claims against him, reasoning "that mere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details—essentially 'a formulaic recitation of the elements of a cause of

action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA." Id. at 247 (quoting Twombly, 550 U.S. at 555). Regarding the plaintiffs' allegations, the court noted:

> [P]laintiffs['] allegations establish only that, upon information and belief, Madigan had the general authority to hire and/or fire employees, and that he maintained employee records. Plaintiffs offer no supporting details to substantiate their belief other than Madigan's job title, and allege no facts concerning the extent of Madigan's alleged involvement in NVR's hiring and/or firing processes or record-keeping policies. Notably, plaintiffs do not allege that they or anyone else were hired by Madigan, or by any predecessor in his position. Plaintiffs' allegations concerning Madigan's level of control, if any, over their work schedules, conditions of employment, and compensation, are even more attenuated. Plaintiffs assert only that Madigan's exercise of his supposed policy-setting powers as the Director of Human Resources in some way "support[ed]," or indirectly impacted, those aspects of their employment.

 Id. (emphasis in original). It also stressed the implausibility of the plaintiffs' assertions in light of the sheer size of their former employer's business. See id. ("[P]laintiffs have failed to sufficiently allege that Madigan—the chief human resources officer in an enormous, multi-billion dollar corporation scattered across hundreds of miles—had and exercised sufficient control over them to satisfy the economic reality test, . . . .").

By contrast, here, the key allegations with respect to Appel's control over Wilk are not made upon information and belief, and, in them, Wilk does more than simply invoke Appel's title. Am. Compl. ¶¶ 30-34. Nor is there any allegation that Appel merely "supports" the policies that ultimately impacted the day to day polices of VIP. Instead, Wilk alleges that Appel himself was authorized to make such decisions on behalf of VIP, including the rate, frequency, and method of VIP's payments to its employees. Am. Compl. ¶ 32. Finally, here, unlike in Tracy, there is no reason to question the plausibility of Wilk's allegations in light of VIP's size or number of employees; there is

19

no allegation that VIP is a massive enterprise with far-flung offices and a large number of employees.  Instead, Wilk merely alleges that VIP is a domestic corporation with its principal place of business in New York that provides services primarily to those living in New York.  Am. Compl. ¶¶ 3, 24.  In sum, because the amended complaint sufficiently alleges Appel's role as Wilk's employer under the FLSA and NYLL, the VIP defendants' motion to dismiss Wilk's FLSA and NYLL claims against Appel is denied.

## III.   CONCLUSION

For all of the foregoing reasons, the VIP defendants' partial motion to dismiss the amended complaint is DENIED in its entirety.

SO ORDERED.

Dated:       Brooklyn, New York
             February 21, 2012


_____/s/_____
I. Leo Glasser
Senior United States District Judge